IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

RELIANCE STANDARD LIFE )
INSURANCE COMPANY, )
 )
    Plaintiff, ) NO. 3:20-cv-00697
 )
v. ) JUDGE RICHARDSON
 )
ERIC ADSIT, )
 )
    Defendant. )
 )

## MEMORANDUM OPINION AND ORDER

    A jury trial in this diversity action was held beginning April 5, 2022. On April 6, 2022, the jury returned a verdict in favor of Defendant on each of Plaintiff's three causes of action. (Doc. Nos. 41, 42). The next day, the Court entered judgment in favor of Defendant. (Doc. No. 37). On May 4, 2022, Plaintiff filed a timely motion for new trial (Doc. No. 45, "Motion"), supported by numerous exhibits as well as a memorandum in support (Doc. No. 46). Defendant filed a response in opposition (Doc. No. 50), whereafter Plaintiff filed a revised version of the memorandum in support of the Motion (Doc. No. 51-2),[1] and then a reply in support of the Motion (Doc. No. 52).

    The Court will not undertake here to recount the evidence that was presented at trial,[2] as the parties' familiarity with the trial evidence is naturally presumed. However, in the next paragraph, the Court will provide the (undisputed) broad factual context for Plaintiff's claims.

---

[1] The memorandum had been revised, in particular, to add citations to the official trial transcript.

[2] Below, in connection with the various respective counts, the Court characterizes the evidence (or lack thereof) on particular topics as necessary.

This is an action for life insurance proceeds[3] paid to Defendant for the benefit of Defendant's son, Anthony Adsit, a minor at the time of payment to Defendant. Plaintiff, a citizen of Pennsylvania for purposes of diversity jurisdiction under 28 U.S.C. § 1332, is a life insurance company. At a time when she was Defendant's wife, Tracy Adsit obtained an accidental death and dismemberment insurance policy issued by Plaintiff, and she designated her son, Anthony Adsit, as the sole beneficiary. Tragically, Tracy Adsit was killed in a car accident in 2009. At the time, Anthony Adsit (who, as indicated above, is the son of Defendant and Tracy Adsit) was eight (8) years old. Defendant wrote a letter to Plaintiff dated March 21, 2011, stating that he was the legal guardian of Anthony Adsit and "all of his estate." (*Id.* at 3). As a result, Plaintiff sent the full amount of the death benefit, $162,500, to Defendant. (*Id.*). Defendant placed the money in a Bank of America custodian money-market savings account when he received it in April 2011. However, virtually all of the money was gone from the account by January 1, 2013, at which time Anthony was only 12 years old. In advance of his 18th birthday in 2019, Anthony wrote to Plaintiff requesting the money and stating that Defendant had never been his Conservator. Plaintiff resolved the issue with Anthony by paying him the amount of the death benefit, in exchange for assignment of Anthony's claims against Defendant.

Plaintiff, understandably being unhappy about having paid the death benefit twice, brought suit (as Anthony Adsit's assignee) against Defendant, asserting causes of action for conversion (Count 1), breach of fiduciary duty (Count 2), and money had and received (Count 3). No dispositive motions were filed, a jury trial was held, and (as noted above) the jury ultimately returned a verdict in favor of Defendant on all three counts.

---

[3] Herein, the Court uses various terms ("money, "funds," "proceeds" and "death benefit") to refer to the proceeds paid by Plaintiff; the Court intends no substantive difference in connotation among the various terms.

## STANDARD FOR MOTION FOR NEW TRIAL

The Sixth Circuit has explained:

> Pursuant to Federal Rule of Civil Procedure 59, "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party ... (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court. . . ." Fed. R. Civ. P. 59(a)(1). Motions for a new trial "must be filed no later than twenty-eight days after the entry of judgment." Fed. R. Civ. P. 59(b). . . . We have explained that the "governing principle" in the district court's consideration of a motion for a new trial "is whether, in the judgment of the trial judge, such course is required in order to prevent an injustice; and where an injustice will otherwise result, the trial judge has the duty as well as the power to order a new trial." *Davis by Davis v. Jellico Cmty. Hosp. Inc.,* 912 F.2d 129, 133 (6th Cir.1990) (internal quotation marks omitted).

*Park W. Galleries, Inc. v. Hochman*, 692 F.3d 539, 544 (6th Cir. 2012).

The Motion is grounded on the proposition that the jury's verdict was unreasonable, *i.e.*, that no reasonable jury could have returned a verdict for Defendant based on the evidence presented at trial. (Doc. No. 51-2 at 9, 9-10, 10, 11, 12). And Plaintiff is correct in asserting that this proposition, where it is properly applies, is grounds for granting a new trial. As Plaintiff writes:

> When a jury has reached a "seriously erroneous result" by issuing a verdict against the weight of the evidence, a new trial is warranted under Rule 59 of the Federal Rules of Civil Procedure. See Holmes v. City of Massillon, 78 F.3d 1041, 1045-46 (6th Cir. 1996). Rule 59 "preserves the trial judge's authority to prevent a jury verdict from standing when . . . the jury's verdict was against the weight of the evidence and a new trial is necessary to 'prevent a miscarriage of justice.'" Waldo v. Consumers Energy Co., 726 F.3d 802, 826 (6th Cir. 2013) (citing Holmes, 78 F.3d at 1047). The authority to grant a new trial is "committed to the sound discretion of the trial judge." Luck v. Baltimore & Ohio R.R. Co., 510 F.2d 663, 668 (6th Cir. 1974). A district court should grant a Rule 59 motion when the jury's verdict is "said to be unreasonable." *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 995 (6th Cir. 2012)

(Doc. No. 51-2 at 9). And when a party argues that a reasonable jury could not have returned the verdict that the trial jury returned on a claim, the Court can (and arguably must, although the Court

need not go that far) consider the jury instructions for that claim under which the trial jury was operating.

For example, in *Preferred Properties, Inc. v. Indian River Ests., Inc.*, 276 F.3d 790 (6th Cir. 2002), the Sixth Circuit rejected the defendants' argument that they were erroneously denied a new trial on a housing-discrimination claim. The defendants' argument was that a new trial was required because the jury instructions required proof by a preponderance of the evidence that the plaintiff was ready, willing, and able to purchase the real property at issue, and because (according to the defendants) a reasonable jury could not have found the existence of this element of the claim—*i.e.*, that the plaintiff was such a buyer. *Id.* at 798. The Sixth Circuit found, however, that the evidence did not preclude a reasonable jury from finding that the plaintiff had met its burden of proof on this element. *Id. Preferred Properties*, unlike the present case, involved a situation where the movant was making a point of asserting that the reasonableness of the jury's action needed to be assessed specifically in light of the elements the jury was instructed it must find. But the Court has no doubt that the principle applies here—meaning that Plaintiff must persuade the Court that the jury's verdict was unreasonable *considering what the jury was told about the elements that they were instructed they must find* (by a preponderance of the evidence) in order to find in Plaintiff's favor.[4]

---

[4] Other extant opinions are to like effect, indicating that the question in this kind of context is whether the trial jury's verdict was one a reasonable jury could have reached considering the elements they were provided via the court's instructions. *E.g.*, *Jeong v. Minnesota Mut. Life Ins. Co.*, 46 F. App'x 448, 450 (9th Cir. 2002) ("We agree that a new trial was not warranted. The district court's interpretation of the allegedly inconsistent verdicts expresses a coherent view of the case. *In light of the jury instructions*, a reasonable jury could have found that Tony Jeong had concealed information but that he had not made a misrepresentation [and thus could have rejected the defendant's defense of misrepresentation by plaintiff]." (emphasis added)); *Est. of Angel Berganzo-Colon v. Ambush*, No. 10-1044 (GAG), 2012 WL 12893026 (D.P.R. Jan. 19, 2012) (denying the defendant's motion for new trial where "the evidence was sufficient for a reasonable jury to conclude the existence of . . . all elements of said cause of action . . . *as per*

Notably, it is axiomatic that a plaintiff cannot prevail on a claim without proving all elements of the claim. So when a plaintiff seeks a new trial on the basis that the evidence was insufficient to support a defense verdict on a claim, it is not sufficient for the plaintiff-movant to show that no reasonable jury could find in favor of the defendant on one or more elements but fewer than elements. Instead, the plaintiff-movant must show that based on the evidence, no reasonable jury could find in favor of defendant on *any* element.

## ANALYSIS[5]

The Motion fails because Plaintiff has not established—and indeed, based on the leeway given the jury under the jury instructions given by the Court without objection, could not possibly establish—that a reasonable jury would be required to find *all* (as opposed to one or two) elements of any of the three claims. Considering the instructions given the trial jury here, a reasonable jury in the trial jury's position could have found that Plaintiff failed to establish at least one of the three elements of each of Plaintiff's three-element claims.

A. Count 1 – Conversion

Regarding Plaintiff's claim of conversion, the jury was instructed, without objection from the Plaintiff, substantially verbatim as follows:

> A conversion is any assumption of control over property that is inconsistent with the rights of the owner. A conversion may consist of the:
>
> 1. Use and enjoyment of personal property of another without the owner's consent; or

---

*the Court's jury instructions*." (emphasis added)), *aff'd sub nom. Est. of Berganzo-Colon ex rel. Berganzo v. Ambush*, 704 F.3d 33 (1st Cir. 2013).

[5] The Court is aware that its analysis diverges significantly from the analysis of each of the parties. This is because, in the Court's view, the parties did not focus adequately on the impact of the *specific instructions the trial jury was actually provided* (without objection) upon the question of whether a reasonable jury could have reached the verdict the trial jury reached.

2. Destruction or dominion over the property of another by excluding or defying the owner's rights; or

3. Withholding of personal property from the owner under a claim of title, inconsistent with the owner's claim of title. If personal property that has been entrusted to another is used in a different manner, or for a different purpose, or for a longer time than was agreed upon by the parties, the person who received the personal property is liable for conversion. In that case, the person to whom the property is entrusted is answerable for all damages, including a loss that due care could not have prevented.[6]

Money is subject to conversion when it is specific and capable of identification or where there is a determinate sum that the defendant was entrusted to apply for a certain purpose.

Notably, Plaintiff did not request that the jury be provided any instructions to clarify these elements—such as, for example, definitions that define or illuminate key terms—and thus the jury was provided no such clarification. That is not to say that the instructions given were wrong or erroneously incomplete, and no one has asserted that they were. It is to say, however, that the jury is not accountable for the fact that the Court did not give (because Plaintiff did not request) additional instructions that in retrospect might have strengthened Plaintiff's current argument that the evidence mandated a verdict in its favor under applicable law on which the jury was instructed.

This claim, unlike Plaintiff's other two claims, effectively gave Plaintiff three different alternative sets of elements. But the Court cannot conclude that a reasonable jury would have been *required* to find that any one of them had been satisfied by Plaintiff, given the instructions the jury was provided.

---

[6] The Court is assuming here, to Plaintiff's benefit, that for purposes of these elements, Anthony Adsit was the "owner of these funds," and that Defendant does not somehow qualify as the "owner" under the theory that he was the "legal" owner holding the money for the benefit of his son.

As for the first alternative, a reasonable jury could find that Plaintiff did not meet its burden of proving that Defendant was culpable of the "use and enjoyment of personal property of" his son. Defendant correctly points out that Defendant, Anthony's sole custodian, testified that he remembered spending the money on "anything Anthony wanted" and took his son on trips to Tennessee, Kentucky, Georgia, Alabama, and Texas. He also testified that he bought a truck because he needed a reliable vehicle to get Anthony back and forth to school and himself back and forth to work (which obviously could inure to Anthony's benefit by enabling Defendant to continue to bring income into the pair's household) and for both of them to travel together. He also testified to the effect that he provided whatever Anthony wanted, such as electronics and movies.

Plaintiff complains that Defendant "offered no credible or reasonable explanation of how he spent practically all of the $162,500 in a mere 20-month period." The Court understands Plaintiff's point. But the burden is on Plaintiff, after all, and a reasonable jury could have effectively refused to put the burden on Defendant by requiring him to satisfy it that he spent all of the money in such a way that he was not culpable of "us[ing] and enjoy[ing]" all or even some of Anthony Adsit's money—especially given the lack of specification of what it means to "use and enjoy[ ]" another's money within the meaning of this first alternative for establishing conversion. In other words, even granting Plaintiff's point that Defendant was, to say the least, not able to show that all (or even most) of the money was spent for his son's benefit—because there was a noticeable gap of information as to how the money was spent—the trial jury reasonably could have construed this as Plaintiff's rather than Defendant's problem, *i.e.* Plaintiff's failure of proof.

As for the second alternative, a reasonable jury could have found that whatever Defendant did here, it was not shown by Plaintiff to amount to "excluding or defying" Anthony Adsit's rights, especially given the lack of specification of what it means to "exclude[e] or defy[ ]" the rights of the owner of the money. And as for the third and final alternative, a reasonable jury could find that Plaintiff did not meet its burden of showing that Defendant's conduct here amounted to the "withholding of personal property from the owner under a claim of title, inconsistent with the owner's claim of title." In particular, especially given the lack of clarification of the key terms, a reasonable jury could find that the facts did not show anything amounting to a "withholding" by Defendant, let alone a withholding "under a claim of title"—especially since there was no evidence of Defendant ever making any overt "claim" of "title." Indeed, it would appear that this third alternative simply does not fit the fact pattern in the instant case, which involves essentially ad hoc spending of the money by Defendant and not any "claims" of "title" by Defendant.

For these reasons, even though perhaps a reasonable jury could have found in Plaintiff's favor on the claim of conversion, the court declines to grant the Motion with respect to that claim.

B. Breach of Fiduciary Duty

Regarding Plaintiff's claim of breach of fiduciary duty, the jury was instructed, without objection from the Plaintiff, substantially verbatim as follows

> In order to recover for breach of fiduciary duty, the Plaintiff Reliance Standard must establish by a preponderance of the evidence: (1) a fiduciary relationship between Defendant Eric Adsit and his son Anthony Adsit during the period of time that Eric Adsit spent the insurance benefits; (2) breach of the resulting fiduciary duty; and (3) injury to Anthony Adsit or benefit to the Defendant Eric Adsit as a result of that breach.

A fiduciary relationship arises when one person places special trust and confidence in another person and that other person—the fiduciary—undertakes to assume responsibility for the affairs of the other party. The person upon whom the trust and confidence is imposed is under a duty to act for and to give advice for the benefit of the other person on matters within the scope of the relationship.

The law recognizes that a parent-child relationship may give rise to a fiduciary duty. The breach of a fiduciary duty may arise out of a confidential relationship between family members.

As with the claim of conversion, the Court does not necessarily deny that a reasonable jury could have found in Plaintiff's favor on the claim of breach of fiduciary duty. But especially given the leeway that the jury was given via the instructions it was provided, a reasonable jury was not r*equired* to find in Defendant's favor on this claim. To begin with, a reasonable jury was not required to find the existence of a fiduciary relationship, for two reasons. First, "fiduciary relationship" was described as arising when (among other things) "one person places special trust and confidence in another person," and a reasonable jury could conclude that Anthony Adsit did not "place special trust and confidence" in Eric Adsit, either generally or (perhaps more to the point) in connection with the money here at issue; this is especially true as to the money here at issue because the evidence was overwhelming that Anthony Adsit was not even aware Defendant had custody of the money until it was all gone. Second, the jury was instructed that a fiduciary relationship *may*—as opposed to "does"—arise out of a parent-child relationship or a confidential relationship between family members, but the jury's prerogative to decline to find a fiduciary duty based *specifically on the existence of such a relationship* was not restricted in any way.

Moreover, for reasons similar to why a reasonable jury was not required to find that Defendant was culpable of conversion, a reasonable jury was not required to find that

Defendant was culpable of a breach of fiduciary duty even assuming that a fiduciary duty existed. In particular, Plaintiff did not request, and thus the Court did not give, instructions defining a "breach" of a fiduciary duty that would have *compelled* the conclusion that what Defendant did here (however else it might be characterized) amounted to a breach of fiduciary duty. This is especially true given the dearth of evidence of Plaintiff providing (as would have been prudent, a fact not likely lost on the jury)[7] Defendant with anything close to instructions or warnings as to how the money must be preserved or spent only for Defendant's benefit.

For these reasons, the Court declines to grant the Motion with respect to Plaintiff's claim of breach of fiduciary duty.

C. Money Had and Received

Regarding Plaintiff's final claim, the jury was instructed virtually verbatim as follows:

> Plaintiff Reliance Standard asserts a claim for money had and received. To prevail on a claim for money had and received, Plaintiff Reliance Standard has the burden of proving three essential elements by a preponderance of the evidence: (1) a benefit conferred upon Defendant Eric Adsit by another person; (2) appreciation by the Defendant Eric Adsit of such benefit; and (3) acceptance of such benefit under such circumstances that it would be inequitable for Defendant Eric Adsit to retain the benefit without payment of the value thereof. It is not necessary for the Plaintiff Reliance Standard to prove any wrongdoing on the part of the Defendant Eric Adsit.

This claim fails because a reasonable jury could easily find the first element not satisfied, especially considering (once again) that the jury was not provided the kind of instructions that

---

[7] The Court feels compelled to note one possible (but only possible) overarching reason why the jury declined to find the most important elements of Plaintiff's claims, *i.e.*, those involving wrongful acts or a wrongful state of mind on Defendant's part. Specifically, the jury conceivably was disinclined to find culpability on Defendant's part when Plaintiff (imprudently) paid over the death benefit to Defendant with virtually no strings attached, and certainly no clear notification to Defendant regarding potential restrictions of Defendant's use and handling of the funds.

would restrict the jury's prerogative to decline to find this element in the way Plaintiff now seemingly wishes it had been restricted. In particular, the jury was inundated with messaging from Plaintiff at trial that Plaintiff, in paying the death benefit, *was not conferring a benefit upon Defendant*, but rather was providing the funds to Defendant as a custodian of funds for the benefit of *Anthony Adsit.* Indeed, that is the whole gist of Plaintiff's first two claims—that Defendant acted tortiously in taking and using funds that, though paid to him, were not a benefit conferred upon *him*. That is, the jury could have concluded (consistent with Plaintiff's first two counts) that the proceeds were not a benefit conferred upon Defendant.[8]

Put differently, Plaintiff was free to pursue claims grounded on the notion that Defendant improperly took and used funds that were *not* conferred as a benefit upon him but rather as a benefit for Defendant's ward, Anthony Adsit. And that is exactly what Plaintiff did here, via Count 1 and Count 2. And Plaintiff was free to pursue a claim grounded on the notion that Defendant took ("appreciate[ed]") funds that *were* conferred as a benefit upon him but did so under particular circumstances that make it inequitable for Defendant to retain the benefit without payment of the value thereof. And that is exactly what Plaintiff did here, via Count 3. But the two theories diverge, and the jury (whether or not it accepted other aspects of Plaintiff's theory on Counts 1 and 2) could reasonably accept the notion for purposes of Counts 1 and 2 that the death benefit was conferred *on Anthony Adsit*, and accordingly decline to conclude that the benefit was conferred on *Defendant* so as to satisfy the first element of a claim of money had and received.

---

[8] Of course, a plaintiff is permitted to pursue alternative claims, and the claims can be based on theories that diverge from one another. But one consequence of this reality is that a jury could reject a claim on the basis that it is based on a theory that conflicts with a different theory (presented by the plaintiff in connection with another claim) that the jury does accept.

For this reason, even though perhaps a reasonable jury could have found in Plaintiff's favor on the claim of money had and received, the Court declines to grant the Motion with respect to that claim.

## CONCLUSION

If Plaintiff had requested additional instructions to clarify the elements of its three claims, and if the Court had granted such request(s), perhaps things would have turned out differently. Perhaps, in that case, the jury would have found in Plaintiff's favor, and, if it did not, perhaps Plaintiff would have had a strong argument for a new trial. But that did not occur. The jury was instructed what it was instructed, and they were instructed consistent with Plaintiff's wishes for such instructions, without objection from Plaintiff. And the Court must consider the instant Motion—especially Plaintiff's core contention that the jury's verdict was unreasonable based on the evidence—in light of what the jury was instructed. And those instructions—although correct statements of the law, as appears undisputed—left sufficient room for interpreting the elements of Plaintiff's claims such that a reasonable jury, under such interpretation, could find in Defendant's favor given the evidence admitted at trial.

Perhaps Plaintiff now regrets not having requested instructions that potentially would have cabined the jury's prerogative to find in Defendant's favor. But the jury *did* have that prerogative, based on the instructions and evidence with which it was presented. That is not necessarily to say that the trial jury should have found in Defendant's favor given what it was presented, or that Defendant behaved admirably in requesting, receiving, spending, and accounting for the death benefits; nor is it to deny that Plaintiff proceeded in good faith (albeit imprudently) in paying the death benefit to Defendant in the first place, or that there is reason to be skeptical of Defendant's handling of the money and explanation as to what happened to it all. It is instead to say only that

the Court, in its discretion, finds that it would be inappropriate to disturb the verdict of the jury—one that was within reason, for the reasons discussed.[9]

Accordingly, the Motion (Doc. No. 45) is hereby DENIED.

IT IS SO ORDERED.

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[9] To address an above-referenced alternative verbal formulation of the new-trial standard, the Court notes that in its discretion, it does not find that the verdict—though perhaps of debatable soundness— was so far against the weight of the evidence that it represents a miscarriage of justice that should be addressed by the grant of a new trial.